UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP TURNER,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:21-cv-790

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss with prejudice Plaintiff's federal-law claims because they fail to state a claim. The Court will further dismiss without prejudice Plaintiff's state-law claims because the Court declines to exercise supplemental jurisdiction over them. The Court will also deny Plaintiff's pending motion.

**Discussion**

## I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the MDOC and MDOC Director Heidi Washington. Plaintiff further sues the following MCF personnel: Warden Sherry Burt, Deputy Warden Darrel M. Steward, Acting Deputy Warden Daniel Miller, Doctor Dale Asche, Health Unit Manager Michael Wilkinson, and Nursing Supervisor Unknown Anderson. Plaintiff also sues Corizon Medical Services.

Plaintiff's complaint is hardly a model for clarity, for providing a short and plain statement, or for complying with the instructions of the form complaint. The form complaint expressly directs, "**[d]o not give any legal arguments or cite any cases or statutes.**" (Compl., ECF No. 1, PageID.5) (emphasis in original). Instead, the form's relevant section instructs plaintiffs to "[s]tate here the **facts** of your case." (*Id.*) (emphasis in original). Plaintiff ignores those directions and attaches pages of single-spaced, printed text. (*Id.*, PageID.7–19.) Those pages are replete with convoluted legalese, citations to cases and statutes, and purported legal conclusions, but there are relatively few factual allegations. The first paragraph of the attached statement of Plaintiff's claim, which Plaintiff designates as his "introduction," consists of a single prolix sentence of more than 250 words that offers little to aid the reader in identifying the nature of any putative claim. (*See id.*, PageID.7.)

After reading several more pages, the complaint finally indicates the nature of the dispute: Plaintiff challenges MCF's lack of ladders for prisoners assigned to top bunks. Plaintiff alleges that without ladders, MCF prisoners assigned to top bunks must mount a plastic chair, next step

onto a desk, and finally climb into the top bunk. MCF has secured neither the chair nor the desk to any fixed, solid structure, so either the chair or the desk could topple while prisoners ascend to their bunks. Plaintiff contends that MCF must install ladders.

On November 19, 2019, Plaintiff arrived at MCF with a medical detail to a bottom bunk, which had been provided by Plaintiff's prior facility. MCF staff initially assigned Plaintiff to a bottom bunk and informed Plaintiff that he would soon see a physician for his "chronic care" status. (Compl., ECF No. 1, PageID.11.) Approximately two weeks later, on December 4, 2019, Defendant Asche denied Plaintiff's request for a medical assignment to a bottom bunk, and Plaintiff moved to a top bunk when another prisoner who had health issues needed assignment to the bottom bunk.

Plaintiff asserts that he warned Defendants Burt, Steward, and Miller of the dangers posed to those assigned to top bunks, and he insisted that ladders were required. The complaint alleges that Defendants Burt, Steward, and Miller ignored his warnings.

On July 10, 2020, Plaintiff fell while dismounting his top bunk. He alleges that the desk tipped over, which caused him to fall and hit the desk and floor. MCF staff took Plaintiff to an emergency room for treatment. Plaintiff does not describe his injuries in detail. He indicates only that his buttocks "split," which required daily attention to change the dressing, and he was given crutches to help him walk.

At some point while still using crutches, Plaintiff was denied a medical assignment to a bottom bunk. The complaint is unclear whether this denial happened on July 10, 2020, or whether the denial happened days or weeks later. Plaintiff alleges that he saw health care staff daily as he continued to receive treatment, but they concluded that Plaintiff did not require assignment to a bottom bunk. Prison Counselor Russell Loomis (not a party) purportedly contacted health care

staff, but Plaintiff remained assigned to a top bunk until he moved cells on August 8, 2020. Plaintiff moved cells several more times, occasionally being assigned to a top bunk.

The complaint further makes a passing reference to "Defendants" retaliating against him by interfering with health care kites and denying grievances. Plaintiff further argues that Defendants Burt, Steward, and Miller acted negligently by failing to install ladders for top bunk prisoners. He also contends that using chairs and desks to climb to top bunks requires that prisoners violate Michigan law related to the misuse of prison equipment.

Plaintiff seeks $500,000 in damages, costs, fees, an injunction to provide Plaintiff unspecified medical treatment and surgery, and, as far as the Court can tell, a declaration that Defendants violated Title II of the Americans with Disabilities Act.[1]

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[1] In his request for relief, Plaintiff writes, "I pray this honorable Court find the Defendants violated Title II of the American[]s with Disabilities Act." (Compl., ECF No. 1, PageID.16.) This appears to be the complaint's only reference to the Americans with Disabilities Act.

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants violated rights provided to him by the First Amendment, Eighth Amendment, Title II of the Americans with Disabilities Act, and state law.

### A.      First Amendment Retaliation

Plaintiff alleges that unspecified Defendants retaliated against him by denying grievances and interfering with health care kites.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him. Accordingly, his speculative allegation fails to state a claim.

### B.     Eighth Amendment

Plaintiff alleges that unspecified Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Based on the facts alleged, the Court will construe Plaintiff's allegations to assert that Defendants Burt, Steward, and Miller failed to provide ladders,

6

and that Defendants Corizon, Asche, Wilkinson, and Anderson failed to provide him a medical detail to a bottom bunk, in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-

indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff offers few factual allegations to support his claim that any Defendant was deliberately indifferent in violation of the Eighth Amendment. Plaintiff alleges that he arrived to MCF with a previous medical assignment to a bottom bunk, that climbing to the top bunk required mounting a chair and desk that could topple, that he fell on one occasion and suffered an injury, and that he was still assigned on several occasions to a top bunk. His Eighth Amendment claims against both the medical and the custodial Defendants relies on a conclusion that his assignment to a top bunk posed a substantial risk of serious harm, Defendants were aware of that risk, and they disregarded that risk.

The Sixth Circuit recently considered similar Eighth Amendment claims brought by a federal prisoner. *See Millhouse v. Jones* (*Millhouse II*), No. 20-5300, 2021 WL 1063196, at *2 (6th Cir. Jan 6, 2021). Millhouse, the plaintiff in that case, presented evidence that he transferred prisons and brought a medical pass with him that indicated he needed assignment to a bottom bunk. *Millhouse v. Jones* (*Millhouse I*), No. 6:18-cv-125, 2020 WL 2844954, at *1

8

(E.D. Ky. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 1042513 (E.D. Ky. Mar. 4, 2020). Millhouse also "suffered from back pain, leg pain, and burning and neuropathy in his foot." *Id.* Notwithstanding his impairments and the pass directing his assignment to a bottom bunk, Millhouse was assigned to a top bunk. *Id.* He fell and suffered minor injuries while climbing into bed his first night. *Id.* A few days after the fall, Millhouse's new prison re-issued him a medical pass, which indicated he needed assignment to a bottom bunk. *Id.* Yet, during the next six months, Millhouse was moved several more times to a top bunk when he bunked with prisoners who had severe health issues needing placement in a bottom bunk. *See id.* During those six months, Millhouse spent slightly more than 100 days assigned to a top bunk. *Id.* at *6. While assigned to top bunks, Millhouse fell a total of three times, hurting his shoulder, elbow, and knee. *See id.* at *1–2.

On *de novo* review, the Sixth Circuit concluded that Millhouse satisfied neither the objective nor the subjective prong of the deliberate indifference test. *See Millhouse II*, 2021 WL 1063196, at *2. The court acknowledged that Millhouse suffered minor injuries from his falls but pointed to the more than 100 nights that Millhouse *did not* fall while climbing into or out of his bed to conclude that Millhouse was not placed in substantial risk of serious harm. *See id.* The Sixth Circuit likewise concluded that Millhouse had not "present[ed] any evidence that could support a finding that the[] defendants were aware of and disregarded a substantial risk to his safety . . . ." *Id.* Presumably because the evidence did not support even the objective prong, the *Millhouse II* court did not clearly distinguish between its analysis of the two prongs.[2]

---

[2] Logically, satisfying the subjective prong of the deliberate indifference test (i.e., that a defendant was aware of and disregarded a substantial risk of serious harm to the plaintiff) requires first satisfying the objective prong (i.e., that a substantial risk of serious harm to the plaintiff *exists*). *See Farmer*, 511 U.S. at 834, 837.

9

Here, Plaintiff alleges facts paralleling those demonstrated by Millhouse's evidence. Both Plaintiff and Millhouse arrived at new prisons with directions from their previous prisons' medical staffs that they should be assigned bottom bunks. Both Plaintiff and Millhouse were instead assigned top bunks. Eventually, both Plaintiff and Millhouse received renewed medical directions for assignment to bottom bunks, and both Plaintiff and Millhouse were nonetheless moved to top bunks occasionally to free bottom bunks for prisoners with severe medical issues. Both Plaintiff and Millhouse spent extended periods assigned to top bunks, and both experienced falls resulting in minor injuries.

Yet, the risks posed to Millhouse that are described in *Millhouse I* and *Millhouse II* exceed those alleged by Plaintiff. Millhouse presented evidence that for years before he fell his first night, he suffered chronic leg pain as well as burning and neuropathy in his foot, which could lead to a reasonable inference that he may have faced heightened difficulty mounting or dismounting a top bunk. Plaintiff alleges only that the chairs and desks used by MCF prisoners could topple and that he was under "chronic care" status for unspecified reasons. However, conspicuously absent from the complaint are any allegations that MCF prisoners frequently fell while mounting or dismounting top bunks due to toppling furniture or that his condition requiring chronic care affected his ability to access the top bunk. Moreover, whereas Millhouse fell on his first night, Plaintiff did not fall for more than seven consecutive months. Considering the frequency of the falls, Millhouse also fell far more often. Millhouse fell *three* times in slightly more than 100 days that he was assigned to a top bunk. Viewed differently, while Millhouse fell on average about once every five weeks, officials at his prison continued assigning him to a top bunk. Here, Plaintiff fell *once* during the first 210 days that he was assigned to a top bunk. That is, he fell once in

10

approximately 30 weeks. That does not even account for the additional time Plaintiff asserts he spent without incident assigned to a top bunk after his fall.

The risk of serious harm clearly appears greater on the facts described by *Millhouse I* and *Millhouse II* than on the facts alleged by Plaintiff. The Sixth Circuit concluded that Millhouse failed to demonstrate that his risk of serious harm sufficed to satisfy either prong of the deliberate indifference test. Therefore, because Plaintiff's allegations describe a risk less severe than the risk reviewed by the *Millhouse II* court, this Court cannot conclude that any Defendant knew of and disregarded a substantial risk of serious harm. Consequently, Plaintiff's allegations fail to state an Eighth Amendment claim. *See Millhouse II*, 2021 WL 1063196, at *2; *see also Redding v. Georgia*, 557 F. App'x 840, 842, 844 (11th Cir. 2014); *Campbell v. Singh*, 496 F. App'x 774, 777–78 (10th Cir. 2012); *Bowman v. Mazur*, 435 F. App'x 82, 84–85 (3d Cir. 2011); *Goodson v. Willard Drug Treatment Campus*, 615 F. Supp. 2d 100, 101–02 (W.D.N.Y. 2009) (citing cases concluding that a difference of opinion between a prisoner and medical officials about the necessity of assignment to a bottom bunk typically does not make out an Eighth Amendment claim). Accordingly, the Court will dismiss Plaintiff's claims.

### C.     Americans with Disabilities Act, Title II

Construing the complaint liberally, Plaintiff contends that unspecified Defendants violated Title II of the Americans with Disabilities Act (ADA).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or

11

benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Plaintiff's factual allegations only clearly satisfy one of the three elements of test described by *Tucker*: Plaintiff has named defendants who are subject to the ADA. The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant, and further names Defendant Washington in her official capacity.

Yet, Plaintiff's allegations fail to support either the first or third elements. As to the first element, Plaintiff alleges only two facts that could plausibly provide any inference that he was a qualified individual *with a disability*. First, he alleges that he at times received a medical note indicating that he should be assigned to a bottom bunk. Yet, health care staff at MCF also concluded that Plaintiff did not require assignment to a bottom bunk. Second, after his fall, Plaintiff suffered an injury to his buttocks and was provided crutches. Such allegations *could* support an inference that Plaintiff was somehow impaired in his ability to mount and dismount the top bunk, but absent from these allegations is an explanation describing what injury required him to use

12

crutches or how any injury affected his ability to access the top bunk. Indeed, absent from the entire complaint is any assertion that Plaintiff, even after his fall, had any particular impairment that limited his ability to access the top bunk relative to the ability of any other prisoner. As noted above, Plaintiff successfully accessed his top bunk on many occasions before and after his single fall. Plaintiff's assertions therefore fail to allege that he is a qualified individual with a disability.

Plaintiff likewise fails to allege any service, program, or activity that Defendants denied him participation in, or the benefits of, based on a disability, nor has he alleged any discrimination he has faced.

In short, Plaintiff's conclusory allegations of an ADA violation without specific factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's ADA claim.

### III. Supplemental Jurisdiction

Plaintiff further asserts several state-law claims. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims")); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should

13

consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### IV.   Pending Motion

Plaintiff has also filed a motion asking for the status of nine copies of his complaint that he sent, and he further seeks an order directing service of the complaint "in a 'timely' manner'" by the U.S. Marshal Service. (ECF No. 13, PageID.53.)

As to the status of the nine copies of the complaint, the Clerk's Office already informed Plaintiff that it received the copies. (ECF No. 11-1.)

Additionally, in an order granting Plaintiff leave to proceed *in forma pauperis*, the Court informed Plaintiff that it would screen the case pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(c)(1). (ECF No. 4, PageID.35.) The Court further informed Plaintiff that it would determine "whether dismissal or service of process is appropriate[] and will fashion an order accordingly." (*Id.*)

Because Plaintiff's complaint fails to state a federal-law claim, ordering service by the U.S. Marshal Service would not be appropriate. Accordingly, the Court will deny Plaintiff's motion.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   June 9, 2022                             /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge